```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS
```

BRADLEY C. MELLINGTON, JR.,

        Plaintiff,

vs.                                Case No. 10-1362-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On December 30, 2009, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 14-23). Plaintiff attained age 18 on February 13, 2008 and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18. Plaintiff was notified that he was found no longer disabled as of March 1, 2008 based on a redetermination of disability under the rules for adults who file new applications (R. at 16). At step two, the ALJ found that

plaintiff had the following severe impairments: borderline intellectual functioning and an anger management problem (R. at 16). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17). After determining plaintiff's RFC (R. at 19), the ALJ determined at step four that plaintiff has no past relevant work (R. at 22). At step five, the ALJ determined that plaintiff can perform jobs that exist in significant numbers in the national economy (R. at 22-23). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23).

**III. Did the ALJ err by failing to include in plaintiff's RFC a limitation that plaintiff requires constant reminders to stay on task?**

The ALJ found that plaintiff has no exertional limitations and has only the following nonexertional limitations: plaintiff is able to understand, remember and carry out simple instructions consistent with unskilled work that is repetitive and routine, that allows learning by observation, and that does not require written instructions (R. at 19). With this limitation, the vocational expert (VE) identified a number of jobs that plaintiff could perform (R. at 375-376). The VE further testified that if plaintiff's RFC included a limitation that plaintiff needed constant reminders to stay on task, all jobs would be eliminated (R. at 376-377). The sole question before the court is whether

5

the ALJ erred by failing to include this additional limitation in plaintiff's RFC.

The record includes a psychological assessment from Dr. Ward, a licensed psychologist.  His report, dated February 20, 2008, concluded as follows:

> Mr. Mellington should be able to complete most simple work assignments, provided they do not require much reading or writing. Mr. Mellington should be able to sustain effort during an eight-hour workday. He should be able to maintain concentration for most work assignments. Mr. Mellington probably would not have difficulty in his relationships with coworkers and supervisors. Mr. Mellington would not be capable of managing his own finances, and he would need a payee. This information is provided for Mr. Mellington's claims of mental disability. No evaluation was done and no conclusions were drawn regarding any claims of physical disability.

(R. at 345).  The ALJ gave the "greatest weight" to the opinions of Dr. Ward (R. at 21, 22).  The record also contains two mental RFC assessments from medical sources.  The first, dated March 17, 2008, is from Dr. Stern (the findings were later affirmed on March 28, 2008 by Dr. Leaf (R. at 318-319).  Dr. Stern opined that plaintiff had moderate limitations in the ability to understand, remember and carry out detailed instructions; in the ability to interact appropriately with the general public; in the ability to travel in unfamiliar places or use public transportation; and in the ability to set realistic goals or make plans independently of others (R. at 323-324).  A second mental

RFC assessment, dated April 16, 2008, was prepared by Dr. Cohn.[1] Dr. Cohn opined that plaintiff had moderate limitations in the ability to understand, remember and carry out detailed instructions; in the ability to interact appropriately with the general public; and in the ability to travel in unfamiliar places or use public transportation (R. at 300-301). The ALJ considered their opinions, but gave greater weight to the opinions of Dr. Ward because his opinions were based on personal observations as well as objective testing (R. at 21-22).

At the hearing, plaintiff testified as follows about a job he did for a class grade:

> Q (by attorney): So are you the type of person that can be shown how to do something, and then you can just go off and do it?
>
> A (by plaintiff): They can, like they can show me and I can do it that day. But if they show me and then I have to leave that day, and come back two or three days later, they are going to have to show me again.

(R. at 359). Later, plaintiff's father testified as follows:

> Q (by attorney): Okay. So he has got difficulty reading and writing. Any other troubles that would keep him from working?
>
> A (by plaintiff's father): He has got a -- when you show him something to do something, a chore or something or other, you have to constantly repeatedly show him. You can't

---

[1] The signature is unclear, but appears to indicate Dr. Cohn (R. at 302). The ALJ identifies the medical source as Dr. Coe (R. at 21).

>just show him to do something, and then two
>or three days later ask him to do that same
>chore again because you will have to go and
>show him all over again. He has to be
>constantly -- he has to -- he can't visualize
>what you tell him and physically. You have
>to physically show him what to do and it is
>constant. There is -- I don't believe there
>is no job that is going to allow him to do
>that.

(R. at 368).  Later, the father testified:

>Q: Do you think Bradley, if he were trained
>for a job and could start working, do you
>think he would know what to do if something,
>if a new situation arose at work would he
>understand how to handle these different
>situations?
>
>A: I don't know. It is depending on the job
>possibly, but then again I doubt it. He would
>have to run to a co-worker and have them,
>and tell them, you know, or ask them for
>help.

(R. at 371).  On further examination by the ALJ, the father

testified as follows:

>Q (by ALJ): Sir, how is he doing with chores,
>and what kind of chores does he do around the
>house?
>
>A (by plaintiff's father):  Right now he
>will, he helps clean up the house. He will
>vacuum for his mother, or he might sweep and
>clean up his bedroom, and reorganize his
>clothing or this or that, but you have to ask
>him to do it more than once before he will
>get up and do it. It's like he has no, I
>guess, initiative to get up and do anything.
>
>Q: Well, is he lazy? I mean, does he not like
>to work, or why? I mean, physically he is
>okay.
>
>A: Yeah. I understand that. I don't know what

>    the deal is.

(R. at 372).  Finally, the father further testified as follows:

>    Q:  And does he take care of his own hygiene?
>
>    A: That he has to be repeatedly told to do. It's kind of embarrassing to an extent, but if my son would admit it, he would go weeks at a time without taking a bath.
>
>    Q: And do you know why that is?
>
>    A: I have no idea. He just doesn't feel like going in there and taking one, and you will tell him. I'll tell him to go take a bath, and he will say okay I'll take one in an hour, and that night he will go to bed and wake up the next morning. Well, why didn't you take a bath yesterday? Well, I didn't feel like it. I'll take one today, and then that day he will go and he is still, and I'm like get in there and take a bath and go take a bath, and we will argue about it. He doesn't like taking a bath.

(R. at 373-374).

The ALJ summarized the testimony by indicating that plaintiff requires several reminders to do household chores and to bathe.  The ALJ also noted plaintiff's testimony that he can learn work tasks when shown, but required another demonstration when he returned to work 2-3 days later.  The ALJ later stated that he found the testimony to be "generally credible," but further stated that it does not document an inability to work.  The ALJ also found that plaintiff is able to learn new material through repetition (R. at 20, 18).  Plaintiff was found by his teacher to have no problems attending and completing tasks (R. at

18, 160).  The ALJ also noted the father's testimony that plaintiff forgets what he has learned in 3-4 days, requiring a new demonstration, but the ALJ found that plaintiff had a greater learning capacity than described by plaintiff's father, as evidenced by plaintiff's ability to complete the 12th grade in special education classes, passing a test for driver's education, and learning simple tasks and video games (R. at 21).

This case comes down to the relative weight or credibility that the ALJ gave to the evidence, including the testimony, school records, and the medical opinion evidence.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel,

206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency

of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

In making his RFC findings, the ALJ gave the greatest weight to the opinions of Dr. Ward because, according to the ALJ, the opinions of Dr. Ward were based upon personal observations and objective testing (R. at 22).  For this reason, the ALJ found symptoms not credible to the extent that they are inconsistent with the RFC (R. at 20).  Plaintiff alleges error because of the ALJ's failure to include in the RFC a finding that plaintiff needs constant reminders to stay on task.  However, Dr. Ward did not include such a limitation in his report, and such a limitation was not mentioned in the mental RFC assessment by Dr. Stern or in the mental RFC assessment by Dr. Cohn.  No medical opinion evidence supported this limitation.  Furthermore, the ALJ gave valid reasons in his decision for discounting the testimony of the plaintiff and his father on this issue, citing to school records (which included a teacher's report showing no limitation in the ability to attend and complete tasks), the fact that plaintiff completed high school, passed a driver's test, and could learn simple tasks.  The court will not reweigh the

evidence.  On these facts, substantial evidence supports the decision of the ALJ not to include this limitation in his RFC findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 6th day of December, 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge